**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

CHARLES BALLARD,

Plaintiff,

v.

OHIO SECRETARY OF STATE, *et al.*,

Defendants,

Case No. 3:25-cv-308

Judge Thomas M. Rose

Magistrate Judge Peter B. Silvain, Jr

---

## ARTICLE III STANDING: CONCRETE INJURY, NOT "GENERALIZED GRIEVANCE

---

### Core injury

Plaintiff alleges that Ohio's Vice Presidential votes, electoral count and recordkeeping structure injured him in a concrete and personal way in the 2024 general election and will do so again in 2028. The district court dismissed the complaint for lack of Article III standing and characterized the alleged injury as a generalized grievance shared by all Ohio voters.

Plaintiff intended to cast distinct votes for President and Vice President, including a separate preference for the vice-presidential candidate, but Ohio's party-ticket system did not allow that vice-presidential preference to be recorded and preserved as a distinct vote. Plaintiff alleges that there is therefore no election record that separately reflects that choice for Vice President, even

though federal law requires election officers to retain and preserve records and papers relating to votes cast in federal elections for 22 months.

Because the same structure—disenfranchising Plaintiff's separate vice-presidential preference and effectively treating that portion of his ballot/votes as provisional or unrecorded based solely on the presidential result—will govern future elections, the alleged injury is recurring and imminent. Plaintiff's independent choice for Vice President is nullified within a bundled vote count driven by the presidential outcome and therefore does not reflect his actual preferences or permit him to express his separate vice-presidential choice in the manner he otherwise would.

## Article III text

*Article III, Section 2 provides that the judicial power extends to "Cases" and "Controversies" arising under the Constitution and laws of the United States and to controversies "between a State and Citizens of another State" and "between Citizens of different States."*

The constitutional text thus uses the word "Citizens," plural, not "a citizen," and it does not say that a controversy ceases to be justiciable when many citizens are injured instead of only one. Nothing in Article III, Section 2 uses the words "standing," "generalized grievance," or "injury in fact." Those concepts are judicial doctrines derived from the "Cases" and "Controversies" language, not phrases written into the constitutional text itself.

## Petition and shared harms

The First Amendment protects "the right of the people ... to petition the Government for a redress of grievances." That text protects the people collectively and weighs against a rule that bars judicial review merely because a constitutional injury is widely shared.

A simple example shows the problem with an overly broad generalized-grievance rule. *If the government negligently poisoned an entire city's water supply, every resident who became sick or suffered loss would have a concrete and personal injury, even though the same event harmed thousands of people at once. The fact that many people were injured would not mean that no one has standing.*

Standing doctrine itself recognizes that point. Supreme Court standing doctrine reflects that where a plaintiff is injured in a concrete and personal way, it does not matter how many other people have also been injured; where harm is concrete, though widely shared, the Court has found injury in fact.

By refusing to recognize Plaintiff's separate vice-presidential preference as a distinct, fully recorded vote, ***Ohio has effectively downgraded his vote to the status of a provisional—or worse, unrecorded—vote***. A regular vote is immediately captured and preserved in the official results; Plaintiff's independent choice for Vice President is never separately recorded or preserved at all. That is not an abstract policy disagreement. It is a "concrete" injury to the weight, integrity, and legal recognition of Plaintiff's vote.

## Misuse of generalized grievance

The district court concluded that it could glean nothing from the complaint showing an effect on Plaintiff not commonly shared by every other Ohio voter and therefore held that Plaintiff lacked standing. But Plaintiff's allegations go beyond abstract disagreement with election administration. Plaintiff alleged that Ohio's system changed the way his own vote could be expressed, thus denying the full effect of his actual vote, prevented his separate vice-presidential preference from being distinctly recorded, and will continue to do so in future elections. Those

allegations describe a concrete impact on Plaintiff's own voting behavior and the treatment of Plaintiff's own vote. Even if other Ohio voters are similarly affected, that does not automatically transform a concrete injury into a nonjusticiable abstraction.

By reducing Plaintiff's allegations to a generalized grievance, the district court effectively treated a widespread injury as if it were no injury at all. That approach goes beyond the text of Article III and beyond standing doctrine's own recognition that widely shared harms may still be concrete.

## Twelfth Amendment

Plaintiff's theory is that Ohio's bundling of presidential and vice-presidential choices and its recordkeeping structure prevented Plaintiff's separate vice-presidential preference from being distinctly captured and preserved, while still using the resulting bundled totals as the basis for certifying electors. That constitutional text confirms that the offices of President and Vice President are legally distinct and that their votes must be separately identified at the electoral level.

Plaintiff's theory is that Ohio's vote bundling after the fact and recordkeeping structure prevented Plaintiff's separate Vice President preference from being distinctly captured and preserved, while still using the resulting bundled totals as the basis for certifying electors. Plaintiff contends that this creates a structural mismatch between the Constitution's insistence on distinct presidential and vice-presidential balloting by electors and the State's refusal to capture and preserve distinct voter preferences for those two offices.

## Case loads argument

To the extent restrictive standing doctrine is defended as a way to conserve judicial resources or reduce court workload, that rationale cannot justify refusal to hear otherwise justiciable constitutional claims. Article III, Section 1 vests the judicial power in one Supreme Court and in such inferior courts as Congress may from time to time ordain and establish. The Constitution thus assigns to Congress—not to standing doctrine—the responsibility to create, organize, and expand the federal judiciary as needed. Congress has long exercised that authority by establishing lower federal courts and setting the number of federal judgeships, including judgeships authorized based on workload. If case volume exceeds judicial capacity, the constitutional answer is legislative action, not the creation or expansion of judge-made barriers that close the courthouse doors to citizens asserting concrete constitutional injuries. A government of laws cannot permit constitutional violations to become unreviewable merely because enforcing the law would require more judges, more courts, or greater institutional capacity. To use workload as a reason to deny otherwise justiciable cases would depart from both the text and the spirit of the Constitution.

**Federal record-retention law**

Federal law requires election officers to retain and preserve all records and papers relating to acts requisite to voting in a federal election, including presidential elections, for 22 months. Plaintiff's point is not merely that records were later destroyed, but that the State's system never distinctly recorded Plaintiff's separate vice-presidential preference in the first place, leaving no distinct record of that part of the voting act to preserve.

That alleged failure affects the integrity and documentation of Plaintiff's own vote. It is therefore framed as a personal injury to Plaintiff, not only as an ideological objection to election policy. As

a result, the records that are preserved do not accurately reflect the full content of Plaintiff's voting act, which is a concrete injury to the integrity and documentation of his vote.

**Government for redress of grievances.**

Defendants did not prevail here by disproving Plaintiff's alleged injury on the merits. Instead, they argue that even if Plaintiff's vote was burdened, distorted, or denied distinct recognition under Ohio's casting of electors for Vice President and recordkeeping system, Plaintiff has no standing to ask a federal court to stop it because the same injury is shared by other citizens. The district court accepted that theory and dismissed the case without reaching the underlying constitutional wrong. If government may continue conduct that allegedly denies and hides citizens' votes, yet no citizen may obtain judicial review because the injury is "generalized," then the law ceases to function as a shield for the people and becomes instead a barrier to enforcement. The Constitution was not written to permit unlawful government action so long as it affects many people at once. Article III extends the judicial power to "Cases" and "Controversies," and the First Amendment protects the right of the people to petition the Government for redress of grievances. A system in which constitutional violations become unreviewable merely because they are widespread departs from the Constitution's text, structure, and purpose. Under that theory, the broader and more systematic the constitutional violation, the less judicial review is available.

**Requested relief**

Plaintiff seeks only an injunction and declaratory relief requiring the State to administer presidential elections in compliance with existing constitutional and statutory requirements by

structuring (1) the ballot and vote-counting process, and (2) the elector-certification and recordkeeping system so that distinct preferences for President and Vice President can be expressed, recorded, and preserved in accordance with current law. This requested relief supports redressability because a court order requiring compliance with existing law would directly change how Plaintiff's future vote is captured and preserved in subsequent presidential elections

Dated: 28 apr , 2026
Respectfully submitted,

Charles Ballard
Plaintiff, pro se
806 McDowell Pl
Dayton, OH 45433

C. Ballard
806 McDowell PL
Dayton, OH 45433

U.S. District Court
200 W. Second St
RM 712
Dayton, OH 45402

4540231472 C077